UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

YOLANDA HENDLEY,

      Plaintiff,

v.                                            Case No. 3:20-cv-797-MAP

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____/

## ORDER

This is an appeal of the Social Security Administration's (SSA) final decision terminating her disability insurance benefits (DIB).[1]  *See* 42 U.S.C. § 405(g).  Plaintiff, appearing *pro se*, argues substantial evidence does not support the Administrative Law Judge's (ALJ) determination she experienced work-related medical improvement and was no longer disabled as of July 31, 2018 (Doc. 24).[2]  Plaintiff appears to concede that, as of this date, her condition no longer met or medically equaled the Listing for anemia (the basis of her DIB award on December 17, 2014).  But she maintains the record demonstrates that her other physical impairments were severe enough to prevent her from engaging in substantial gainful activity.  After considering Plaintiff's argument, Defendant's response, and the administrative

_____

[1] The parties have consented to my jurisdiction under 28 U.S.C. § 636.

[2] Plaintiff was represented by counsel at her hearing before the ALJ but is pursuing this appeal *pro se*.  Plaintiff submitted a one-page letter brief (Doc. 24) in response to the Court's October 7, 2021 Show Cause Order (Doc. 23), which the Court construes as her brief in opposition to the Commissioner's decision.

1

record, I find the ALJ applied the proper standards, and his decision is supported by substantial evidence (docs. 16, 24, 30).  I affirm.

*A.  Background*

Plaintiff Yolanda Hendley was born on November 19, 1973, and was 45 years old when the ALJ issued his October 28, 2019 decision finding Plaintiff no longer disabled and terminating her benefits. (R. 36)  Plaintiff has a high school education and past work experience as a customer service representative, collections clerk, mortgage loan processor, and telephone sales representative. (R. 25)  On December 17, 2014, when Plaintiff was 41 years old, the Commissioner found Plaintiff disabled because her anemia met Listing 7.02A of 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19)  At that time, Plaintiff was undergoing monthly blood transfusions.[3]

Under the regulations, the Commissioner reevaluated Plaintiff's entitlement to benefits in July 2018, and found Plaintiff no longer met the listing for anemia as of July 31, 2018, and had medically improved since her last comparison point decision (CPD)[4] in 2014. (R. 103-06) The ALJ upheld this determination.  (R. 17-26)  Although the ALJ found Plaintiff had the severe impairments of spine disorders and obesity, he concluded she retained the residual functional capacity (RFC) for light work. (R. 20)  The ALJ found that with this RFC Plaintiff could perform her past relevant work. (R. 25)  Consequently, the ALJ concluded Plaintiff was no longer disabled and terminated her benefits as of July 31, 2018.  The Appeals Council

---

[3]  Plaintiff's anemia was due to menorrhagia (excessive menstrual bleeding). (R. 103-05)

[4]  A CPD is the most recent final agency decision holding that the claimant is disabled. Specifically, a CPD is "the most recent favorable medical decision ... involving a consideration of the medical evidence and the issue of whether you were disabled or continue to be disabled which became final."  20 C.F.R. § 404.1594(b)(7).

denied review of the ALJ's decision. (R. 1-3)  Plaintiff, having exhausted her administrative remedies, filed this action.

   B.   *Standard of Review*

   Courts review the Commissioner's final decisions to determine if they are supported by substantial evidence and based on proper legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).   Substantial evidence consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* (quotations omitted).  Because we "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]," a decision supported by substantial evidence must be affirmed, "even if the proof preponderates against it."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (quotations omitted).  The burden ultimately rests with the claimant to prove that she is disabled and entitled to Social Security benefits.  *See* 20 C.F.R. § 404.1512(a).

   A claimant's continued entitlement to disability benefits must be reviewed periodically.   20 C.F.R. § 404.1594(a).   The Commissioner may terminate a claimant's benefits upon finding there has been medical improvement in the claimant's impairment or combination of impairments related to the claimant's ability to work and the claimant can now engage in substantial gainful activity.   42 U.S.C § 423(f)(1).   To determine whether disability should be terminated, the Commissioner conducts a multi-step evaluation process to determine:

   (1) Whether the claimant is engaged in substantial gainful activity;

   (2) If not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;

(3) If impairments do not meet a listing, whether there has been medical improvement;

(4) If there has been improvement, whether the improvement is related to the claimant's ability to do work;

(5) If there is improvement related to a claimant's ability to do work, whether an exception to medical improvement applies;

(6) If medical improvement is related to the claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, whether the claimant has a severe impairment;

(7) If the claimant has a severe impairment, whether the claimant can perform past relevant work; and

(8) If the claimant cannot perform past relevant work, whether the claimant can perform other work.

*See* 20 C.F.R. § 404.1594(f).  Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [she] [w]as disabled . . . ." 20 C.F.R. § 404.1594(b)(1).

To determine if there has been medical improvement, the Commissioner must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence.  *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985); *see* 20 C.F.R. 404.1594(c)(1).  To terminate benefits, the Commissioner may not focus only on new evidence about disability but must also evaluate the evidence upon which the claimant was originally found to be disabled.  *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984).  Without a comparison of the old and new evidence, there can be no adequate finding of improvement.  *Id*.

4

*C.  Discussion*

Plaintiff does not address her anemia in her brief (Doc. 24).  Instead, she argues that her headaches, chronic pain, and chest pain are disabling impairments.  She states:  "I do not agree that a person of my age can be disabled then not disabled.  My health is not getting any better.  I now have more health conditions that are affecting me now than what I had before I'm being told I am no longer disabled." (*Id.* at 1).  Specifically, she has "headaches that cause me to literally blink out," her "knees, back, arms, hands and my entire body hurts me on a constant basis[,]" she has chest pain and "[s]harp pains run up & down my legs and at the bottom of both of my feet[,]" and she "cannot get a good night's rest ever." (*Id.*)  The Commissioner retorts that substantial evidence supports the ALJ's decision (Doc. 30), and I agree.

An ALJ must compare a claimant's CPD with her current medical condition to determine if there has been medical improvement in the claimant's impairments since the CPD and, if so, whether the medical improvement is related to the claimant's ability to work. 20 C.F.R. § 404.1594(a), (b)(1).  But under 20 C.F.R.§  404.1594(c)(3)(i), if a claimant no longer meets a listing, a finding of medical improvement related to the claimant's ability to work is presumed:

> If our most recent favorable decision was based on the fact that your impairment(s) at the time met or equaled the severity contemplated by the Listing of Impairments in appendix 1 of this subpart, an assessment of your residual functional capacity would not have been made.  If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work.

20 C.F.R. § 404.1594(c)(3)(i).

Plaintiff does not challenge the ALJ's conclusion she no longer meets a listing. In May 2015, the SSA removed Listing 7.02 for chronic anemia. But for applications before May 2015 (like Plaintiff's, whose original disability onset date was January 17, 2014, based on her December 17, 2014 CPD), Listing 7.02's anemia criteria apply. Listing 7.02A required that the percentage of red blood cells in the claimant's blood (hematocrit) be 30% or less. A claimant also needed to show he or she had at least one blood transfusion every two months, on average. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 7.02A.

Here, the ALJ found that "[t]reatment records reflect that the claimant has maintained normal or near normal hematocrit and hemoglobin levels." (R. 20) In making this decision, the ALJ reviewed Plaintiff's medical records, including those from a March 2018 examination at Hyde Park Medical Arts where the claimant reported she was doing well and her anemia was under control (R. 487) and records from an October 2018 appointment where Plaintiff was treated for a urinary tract infection and told the doctor she was not taking any medications. (R. 717) Substantial medical evidence supports this conclusion; indeed, Plaintiff does not challenge it. (*See* R. 38, ALJ: "Do you think your condition is better?" Plaintiff: "It may be different, due to me not receiving, you know, with the blood transfusion, but I have a lot of problems."); *see also Williams v. Astrue*, Case No. 5:07-cv-110-Oc-10GRJ, 2008 WL 4456460, at * 10 (M.D. Fla. Sept. 30, 2008) (upholding ALJ's decision terminating benefits because plaintiff no longer met a listing; plaintiff did not challenge ALJ's listing determination and instead argued ALJ reviewed no new evidence).

Instead, without pointing to any specific evidence, Plaintiff argues her other impairments are disabling. When the ALJ asked her what keeps her from working, she responded: "Well, my ability to walk, my ability to lift, my ability to stand, my ability to sit.

You know, sometimes my focus may be off.  I have headaches.  My legs hurt, my knees hurt, my back hurt[s]." (R. 39)  She testified to daily migraines that can last for days; as of October 2019, she was taking topiramate and Elavil. (R. 40, 86)  Her joint pain is so bad she testified she struggles to whisk an egg: "[I]f you want to beat an egg up, because of, you know, the motion you have to use to beat a[n] egg, I can't because I have a lot of pain, you know, in my elbow or something like that." (R. 41)  Plaintiff had gastric bypass surgery in 2011 but has since gained weight, due to immobility. (R. 47)   Although Plaintiff's treatment records indicate she declined epidural injections because she feared needles (*see* R. 83), Plaintiff testified she had one epidural injection in her back that was "a disaster" and did not help. (R. 51)

After reviewing the record, the ALJ found that even though Plaintiff's anemia had resolved as of July 31, 2018, she continued to suffer from the severe impairments of spine disorder and obesity.  An August 2016 abdominal x-ray showed mild degenerative changes in Plaintiff's lower lumbar spine. (R. 529)  In March 2017, Plaintiff reported to UF Family Medicine that she had chronic bilateral low back pain with right side sciatica. (R. 438)   In May 2017, treatment notes from UF Family Medicine physician Amra Hadzic, M.D. indicated Plaintiff's "current medical conditions are mostly stable." (R. 417) A January 2019 lumbar MRI showed mild-to-moderate bilateral neural foraminal narrowing at L4-5 with both L4 nerve root abutment and possible left L4 nerve root mild impingement. (R. 742)

Examinations by primary care doctor Amanda Zaide, M.D. in 2018 and 2019 were largely normal:  She reported generalized back pain on and off since she was a teenager (R. 726), but Dr. Zaide noted Plaintiff's normal back curvature, no tenderness, ne edema, no neurological deficits, a full range of motion in all her extremities, and negative straight leg

raises. (R. 707, 732, 734, 740, 758, 764, 781, 787)  She reported no pain in her muscles or joints, no limitation in her range of motion, and no numbness or weakness. (R. 731)  In January 2019, her pain management doctor urged her to consider epidural injections to treat her back pain, despite her fear of needles, because "I will not just have her on narcotics." (R. 758)  In February 2019, she told her pain management doctor that her medication was "working really well." (R. 766)  Regarding Plaintiff's migraines, she regularly reported them to her primary care doctor and her pain management doctor, but she treated them with medications and, in May 2019, at a visit to establish herself as a new patient at Family Medical Centers, she did not list migraines among her complaints. (R. 61)

Although Plaintiff testified that Dr. Zaide prescribed a walker delivered to her house, there is no record of this in the treatment notes from any of Plaintiff's doctors (R. 42-43)  In fact, in February and April 2019, her treatment provider noted she had a normal gait and normal range of motion. (R. 770, 772)  Regarding Plaintiff's obesity and diabetes, she testified she no longer takes metformin for her diabetes because it is "doing better." (R. 39)  In the words of her treating physician (in May 2018), after Plaintiff's 2011 gastric bypass surgery, her "diabetes is gone." (R. 739)  Although Plaintiff had gained "a lot" of the weight back after her gastric bypass surgery (R. 46), and Dr. Zaide repeatedly counseled Plaintiff to diet and exercise to control her weight, no physician noted any limitations related to Plaintiff's obesity. Plaintiff declined injections to treat her pain and testified to using conservative treatment measures at home such as heating pads, muscle rubs, hot rags, and Epsom salts. (R. 48)

Against this medical backdrop, substantial evidence supports the ALJ's decision that Plaintiff retains the RFC for light work and can return to her past jobs.  At this point in my analysis, I reiterate that, when reviewing an ALJ's decision, my job is to determine whether

the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, I am not permitted to reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Considering this, I find the ALJ's decision is supported by substantial evidence. The Commissioner's decision is affirmed.

> *D.  Conclusion*

For the reasons stated above, the ALJ's decision is supported by substantial evidence. It is ORDERED:

> (1) The ALJ's decision is AFFIRMED; and
>
> (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on January 31, 2022.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE